Homer PENNY, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant–Appellee.

No. 92–15580.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 18, 1993.

Decided Aug. 16, 1993.

ALJ's conclusion that Penny was not "under any disability within the meaning of the Act at any time through the date of this decision"—May 17, 1989. Penny argues that the denial of his application is not supported by substantial evidence on the record as a whole and that the ALJ improperly rejected his claims of disabling pain. We reverse and remand to the district court with directions to enter judgment awarding both disability insurance benefits and SSI benefits.[1]

## I.

Homer Penny is 46 years old and has a ninth grade education. He had worked as a maintenance man in a winery for seventeen years. In 1980, Penny suffered a lifting injury that caused a ruptured disc. He declined surgery and was restricted from "heavy lifting or repeated bending." Penny was terminated in 1982 because he could no longer meet the physical demands of the job. He has not worked since that time.[2]

In November 1984, Penny had an auto accident that caused a neck injury. Shortly thereafter, he was diagnosed with degenerative disc disease. On March 5, 1988, Penny sustained another injury to his back from twisting while reaching for a door knob. He underwent a hemilaminotomy and diskectomy in April 1988.

Penny applied for Title II disability insurance benefits and Title XVI SSI benefits on April 20, 1988, alleging disability due to back surgery and continuous problems with pain since June 27, 1980. An Administrative Law

James Hunt Miller, Fresno, CA, for plaintiff-appellant.

Kaladharan M.G. Nayar, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, CA, for defendant-appellee.

Before: LAY,* Senior Circuit Judge, HUG, and SCHROEDER, Circuit Judges.

LAY, Senior Circuit Judge.

Homer Penny appeals the judgment of the district court affirming the Secretary's denial of his application for disability insurance benefits and supplemental security income benefits (SSI). The district court affirmed the

---

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Title II of the Act, 42 U.S.C. § 401 *et. seq.*, provides for disability insurance for covered wage earners. Eligibility for Title XVI SSI benefits is based on economic need. The more "chargeable" income a claimant has, the less SSI benefits he will receive. 42 U.S.C. § 1382(a)(2). Whether Penny meets the means test for SSI is not the issue before us. We pass only on the question of whether the claimant meets the definition of "disabled" (*i.e.*, unable to perform substantial gainful activity) such that he could be considered for SSI benefits. The definition of disability is virtually identical for SSI

consideration as it is for Title II disability insurance benefits. Indeed, many claimants apply for Title II and Title XVI benefits concurrently. *Guadamuz v. Bowen*, 859 F.2d 762, 764 (9th Cir.1988).

2. Penny applied for Title II disability insurance benefits in December 1981, alleging an onset date of June 27, 1980. That application was denied February 19, 1982. Because Penny failed to pursue administrative remedies, the decision became final and binding as to claimant's condition prior to February 19, 1982. 42 U.S.C. § 405(h); *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir.1986). Penny, however, received a workers compensation settlement in the amount of $42,000 in 1980 for that work-related injury.

Judge held a hearing on December 7, 1988.[3] The ALJ determined that Penny had met the special earnings requirement under Title II through June 30, 1987. Thus, with regard to his claim for disability insurance benefits, Penny had the burden to prove he was disabled prior to June 30, 1987.

In his memorandum opinion, the ALJ made general findings that, as of the date of the hearing, 1) Penny suffered from severe musculoskeletal impairments which after surgical correction did not meet or equal any of the listed impairments contained in 20 C.F.R., pt 404, subpt P, app. 1 (1987); 2) medical evidence did not establish that Penny's impairment was expected to last twelve months; 3) Penny retained a residual functional capacity to do sedentary work; and 4) Penny's allegations of pain were not credible. Accordingly, the ALJ concluded that Penny was not disabled and therefore not entitled to any benefits.

## II.

The ALJ devoted almost his entire examination to Penny's pain and disability existing on the date of the hearing, December 7, 1988. Thus the record is confusing as to whether the ALJ properly focused on whether, for purposes of his Title II disability insurance claim, Penny was disabled prior to June 30, 1987. As previously indicated, the ALJ evaluated the entire case based upon the evidence available through the time of his decision of May 17, 1989.

■ We review the judgment of the district court in denying each of these claims de novo. *Adams v. Bowen,* 872 F.2d 926, 927 (9th Cir.), *cert. denied,* 493 U.S. 851, 110 S.Ct. 151, 107 L.Ed.2d 109 (1989). The Secretary's denial of benefits will be disturbed only if it is not supported by substantial evidence on the record as a whole or it is based on legal error. *Brawner v. Secretary of Health & Human Servs.,* 839 F.2d 432, 433 (9th Cir.1988). We consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secre-

tary's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir.1985).

In order to qualify for disability benefits, a claimant must establish that he is unable to engage in "substantial gainful activity" due to a "medically determinable physical or mental impairment" which "has lasted or can be expected to last for a continuous period of not less than 12 months." *Marcia v. Sullivan* 900 F.2d 172, 174 (9th Cir.1990) (quoting 42 U.S.C. § 423(d)(1)(A)). "A claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Id.*

■ At step five of the sequential analysis, once a claimant has proven that his physical impairment prevents a return to his previous occupation, the burden shifts to the Secretary to show that the claimant can engage in other types of substantial gainful work that exist in the national economy. *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir.1984). The Secretary must consider the claimant's residual functional capacity and vocational factors such as age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.-920(f) (1989).

■ We hold that the ALJ erred in determining that substantial evidence on the record as a whole did not support Penny's disability claim. The ALJ determined that, at a minimum, Penny could perform sedentary work. This determination was based solely on a report of December 20, 1988 from Dr. Ross, a neurosurgeon at the Veterans Hospital in San Francisco, opining that Penny could perform sedentary work as defined by the Social Security Administration. The ALJ then found that Penny could not return to his past relevant work as a maintenance engineer, as of 1982 but concluded, by use of the medical vocational grid, that Penny could carry on substantial gainful activity by doing sedentary work. The ALJ rejected Penny's complaints of pain as not credible, concluding that Dr. Ross "presumably factored pain into

---

**3.** All of Penny's medical records from 1980 through his hospitalization in 1988 were offered into evidence. The case history shows that Penny had an initial laminectomy in 1969 from which he had fully recovered.

his conclusion." He also doubted Penny's credibility as to pain because the medical records indicated that Penny had little medical treatment between 1985 and 1988.

■ We find the ALJ erred at several different points in the analysis. First, our review of the record as a whole indicates that the ALJ ignored substantial evidence on the overall record indicating that Penny was disabled within the meaning of the Act. Penny testified extensively at the hearing about the pain and numbness that he has endured perpetually for years.[4] Although Dr. Ross' opinion indicated Penny could do sedentary work, the opinion was based solely upon his evaluation of the medical records relating to the 1988 surgery. Dr. Ross was not Penny's treating physician and in fact never personally examined him. Without the benefit of hearing Penny's complaints of pain, we find Dr. Ross's opinion regarding Penny's ability to perform "sedentary work" as defined by the Social Security Administration[5] to be of very limited value.[6]

Other evidence in the record as a whole further supports Penny's claims. Dr. Kevin F. Hanley, a board certified orthopedic surgeon, examined Penny on May 26, 1989.[7] He concluded that "this gentleman's capabilities to pursue occupational activities are extremely limited, and it is unlikely that he could perform any type of productive job activity in his current condition. It is further extremely unlikely that these conditions are remediable."

■ We find as an additional matter that the ALJ erred in discounting Penny's complaints of pain. In *Bunnel v. Sullivan,* 947 F.2d 341 (9th Cir.1991), we held that an adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence. *Id.* at 346–47. We reasoned that if an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for the adjudicator to consider anything other than medical findings. *Id.* at 347. The district court noted the error of the ALJ, but upheld the ALJ's rejection of Penny's non-exertional pain on the ALJ's alternative finding that Penny's complaints of pain were not credible.

Nothing in the present record refutes, on the date of the hearing, plaintiff's claim of pain and its severe limiting effects. There is nothing in the record to demonstrate that plaintiff was malingering or lying concerning his subjective pain. Although an ALJ is responsible for resolving questions of credi-

---

4. Penny testified that the pain in his legs has gradually worsened since the 1988 surgery. It extends to his hips, lower back, down his knees to the tips of his toes. He testified that he is required to use a cane from time to time. He is on constant medication of Percocet, Motrin and sleeping pills. He testified that even with the sleeping pills, he has trouble sleeping because of constant pain in his neck and lower back. He has trouble picking up his legs and at times must roll out of bed and get on all fours to get up. He has trouble putting his shoes and socks on. He is prevented from doing any normal activities or housekeeping. He watches television from a recliner. His legs are always numb and he feels as if he has no blood circulation. He is uncomfortable standing for any length of time. After he is on his feet for about an hour, his hips start bothering him. He cannot lift, kneel or bend without pain. He can walk about four blocks but after that his legs give out. His hands get numb because of the pinched nerve in his neck. He is still under the care of a doctor.

5. Under the regulation, the definition of sedentary work is:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (1989).

6. We deem it significant that even as Dr. Ross opined that Penny could perform sedentary work, he stated that Penny still suffered lower back pain and radiating leg pain requiring medication and use of a cane and that Penny incurred limitation of activity to a marked degree. Dr. Ross also stated that Penny has a herniated cervical disc which may require additional surgery.

7. Although the ALJ did not have the advantage of this opinion letter, the Appeals Council considered this information and it became part of the record we are required to review as a whole.

bility, here the ALJ's conclusory finding that Penny's claim of pain was not credible is refuted by *all* of the medical records and the opinions of both Dr. Ross and Dr. Hanley. The ALJ discredited Penny's testimony of existing pain because he did not seek medical treatment for back pain between January 1985 and March 1988. This fact does not in any way prove that Penny's testimony concerning his pain at the time of his hearing was not credible. Moreover, the ALJ's finding that Penny's daily activities indicate that he was not in pain is simply unsupported by any evidence in the record as a whole.

We find that the overall record supports Penny's claim through May 17, 1989, that he was disabled under the meaning of the Act.

### III.

■ The government urges that Penny did not sustain his disability claim under Title II in that Penny did not prove he was disabled prior to June 30, 1987.

The record indicates that the ALJ failed to examine Penny concerning his medical condition including the pain and suffering relating to his impairments existing prior to June 30, 1987. Penny's testimony concerning that time period, as adduced by the ALJ, is sparse. However, there is substantial evidence that many of the symptoms he described as currently disabling existed for several years prior to his 1988 surgery.

■ A claimant initially bears the burden of proving that he is disabled. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir.1986). The ALJ found that on or before June 30, 1987, Penny could not return to his past relevant work. The burden then shifted to the Secretary to show that Penny could perform "other work" considering his residual functional capacity, age, education and work experience. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1986). The Secretary, however did not meet this burden. The ALJ failed to address Penny's testimony regarding his condition on or before June 30, 1987. He instead devoted his entire examination to Penny's condition following the 1988 surgery. Indeed the only testimony that went to the issue of whether Penny's pain of December

1988 was related to or connected with his condition existing prior to June 30, 1987 was a single question by the ALJ:

ALJ: And has, has this pain and stiffness and numbness in your upper back and arms—have you experienced that from 1984 to the present?

Penny: Yes. Yes I still—it's getting worse as far as I can tell.

The Secretary determined that Penny could not return to his lifetime occupation as early as 1982. Having made such a concession, the Secretary must produce evidence that there exists within the national economy light or sedentary work that the claimant could perform. This the Secretary failed to do. There is no testimony in the record to refute Penny's claim of disability. The Secretary rested its case on the sole statement of Dr. Ross that Penny could do sedentary work. But, as indicated, we find this weak evidence because Dr. Ross had never examined Penny. Different people may be affected by similar injuries in different ways. Different people have greater or lesser sensitivity to pain. Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual.

■ As a consequence of the ALJ's error in discrediting Penny's complaints of pain, the Secretary erroneously relied on the medical vocational grids to determine that there were jobs in the national economy that Penny is capable of performing. This court has given extensive instruction concerning the use of the medical vocational grids when there is pain so severe that it provides limitation and disability to a claimant. *See, e.g., Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573 (9th Cir.1988); *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids. 20 C.F.R., pt 404, subpt P, app. 2 § 200.00(d), (e) (1987). A nonexertional impairment, if sufficiently severe, may limit the claimant's functional capacities in ways not contemplated by the guidelines. In such a case the guidelines would be inap-

plicable. *Desrosiers,* 846 F.2d at 577. We have held that pain may be a non-exertional limitation. *See, e.g., Perminter v. Heckler,* 765 F.2d 870, 872 (9th Cir.1985).

Because we find substantial evidence on the record as a whole supports Penny's claim of non-exertional pain (see n. 4 *supra* ), use of the medical vocational grids was improper and the Secretary should have utilized a vocational expert. The Secretary failed to carry its burden. No vocational expert testified and there is no other evidence to show that Penny was capable of performing even light or sedentary work. Consistent with this court's analysis in *Perminter,* 765 F.2d at 872, we find that the Secretary has failed to support his denial of Penny's claims.

We reverse and remand to the district court with instructions to enter judgment for the claimant in accordance with this opinion.

It is so ordered.