**Margaret RIDDLE, Plaintiff,**

v.

**Kenneth APFEL, Commissioner, Social Security Administration, Defendant.**

**Civil Action No. 98–1845–PHXROS.**

United States District Court, D. Arizona.

Dec. 17, 1999.

Rodney Oliver Salmi, Taylor & Associates, Phoenix, AZ, for plaintiff.

## MEMORANDUM AND ORDER

YOUNG, District Judge.[1]

### I. *Introduction*

Plaintiff Margaret Riddle ("Riddle") appeals from a denial of her application for disability insurance benefits by the Social Security Administration (the "Administration"). *See* 42 U.S.C. § 405(g). Her application was denied by an administrative law judge on May 29, 1997, and the Appeals Council declined further review on September 24, 1998. Both parties move for summary judgment based on the administrative record.

### II. *Factual Background*

Riddle was born on December 2, 1939. *See* Tr. 135. She earned a high school equivalency degree in 1950. *See* Tr. 36, 76. She has past work experience as a microsectionist, a restaurant shift manager, an auto parts delivery person, and a sales person. *See* Tr. 54–56, 76, 80–85.

In her disability report, Riddle stated that she was unable to work from August 12, 1994 because of fibromyalgia. *See* Tr. 72. She had been examined by Dr. Darryl Mohr ("Mohr") on June 20, 1994, who placed her on "light duty." *See* Tr. 148. Dr. Leonora Jui examined Riddle on July 27, 1994, diagnosing her with tenosynovitis of both wrists, lateral epicondylitis of both elbows, and trapezious strain. *See* Tr. 147. Dr. Jeffrey Steeno ("Steeno") reported on August 3, 1994 that Riddle had complaints of chronic neck and arm pain. *See* Tr. 209. Physical examination revealed slight paraspinal and trapezial muscular tenderness, but Steeno referred Riddle to a neurosurgeon in light of her history of cervical degenerative disc disease.

Mohr saw Riddle again on August 17, 1994 and ordered an arthritis profile. *See* Tr. 145. The results were unremarkable. *See* Tr. 149, 150. Neurosurgeon Marc Ericus ("Ericus") conducted an examination of Riddle on August 25, 1994, during which she complained of severe neck pain. *See* Tr. 143. Dr. Eduardo Aenlle ("Aenlle") examined Riddle on August 26, 1994, noting that she could not reach behind her back or abduct her shoulders more than forty-five degrees. *See* Tr. 144. Aenlle saw her again on September 2, 1994, diagnosing shoulder tenosynovitis and ordering physical therapy three times per week. *See* Tr. 158.

Neurosurgeon Robert Dunn ("Dunn") examined Riddle on September 15, 1994 in connection with a worker's compensation claim. *See* Tr. 15, 150–52. Neurologic examination revealed adequate flexion and extension, although Riddle complained that any movement in her neck caused pain. *See* Tr. 151. Sensory examination was unremarkable, except for slight tenderness in both wrists. Dunn opined that Riddle's tenosynovitis was almost clear. *See* Tr. 152. Dunn did not believe that Riddle needed active medical treatment, although her cervical problem should be monitored. He opined that she was capable of performing some type of work, but not her former work as a microsectionist. *See id.* He recommended that Riddle avoid rapid alternating hand movements and prolonged neck flexion.

Steeno examined Riddle again on September 27, 1994, diagnosed probable osteoarthritis, and referred her to a rheumatologist. *See* Tr. 216. Dr. William Pretlow ("Pretlow"), a rheumatologist, examined Riddle on October 18, 1994. He observed good grip strength and no signs of synovitis. He reported, however, "multiple tender points in the typical distribu-

---

1. Of the District Court for the District of Massachusetts, sitting by designation.

tion of fibromyalgia." Tr. 218–19. Lateral rotation of the neck was markedly reduced, leading Pretlow to diagnose degenerative cervical disc disease with chronic pain, associated fibromyalgia, and depression. On November 21, 1994, Pretlow reported that Riddle had joined a spa. *See* Tr. 224. Both Pretlow and the spa director recommended that Riddle engage in a program of low impact aerobics.

Doctors Pretlow and Steeno both reported some improvement in Riddle's symptoms after medication. *See* Tr. 226, 229. Pretlow reported, however, that Riddle had lower back and trochanteric tender points and therefore recommended physical therapy. *See* Tr. 229. Physical therapist Don Challgren saw Riddle on January 24, 1995, noting that she had an active exercise program including water aerobics and use of a treadmill and exercise bike three times a week. *See* Tr. 233. Pretlow saw Riddle again on March 1, 1995, reporting that physical therapy had helped her back. *See* Tr. 239.

Consulting psychologist Steven Fox ("Fox") examined Riddle on March 2, 1995, noting that she did all self-care activities including cooking, cleaning, and laundry. *See* Tr. 165. He diagnosed her with mixed anxiety and depressed mood, but considered her functioning good. *See* Tr. 164–68.

Independent examining neurologist Dr. John Kelly ("Kelly") saw Riddle on April 19, 1995. *See* Tr. 169–75. Riddle described her symptoms as not worsening, but clearly not improving. She stated that her wrist and hand pain were virtually gone, but all movements of the cervical spine caused pain. *See* Tr. 173. Kelly diagnosed multiple level cervical spondylitis, opining that Riddle's current complaints could not reasonably be attributed to degenerative changes in the cervical spine. *See* Tr. 174–45. While noting that Riddle was being treated for fibromyalgia and being maintained on disability status, Kelly felt that any employment-related pain complaints represented no more than temporary symptomatic aggravation. *See* Tr. 175.

Dr. Kevin Ladin ("Ladin") examined Riddle on April 24, 1995, diagnosing diffuse musculoskeletal pain syndrome, suspected fibromyalgia, and cervical degenerative arthritis and disc disease. *See* Tr. 279. On June 13, 1995, Ladin noted moderate symptomatic improvement, possibly due to an intervening treatment involving myofascial trigger point injections. *See* Tr. 274, 275.

Ladin completed a physical capacities evaluation form on April 5, 1996. *See* Tr. 313–15. He indicated that Riddle could lift or carry ten pounds and that she could engage in simple grasping and manipulation. He also wrote that she should avoid heavy lifting, frequent repositioning of the upper extremities, and repetitive work with the upper extremities. Finally, he concluded that she could not work. *See* Tr. 315.

On August 13, 1996, Ladin wrote a letter to Riddle's insurance carrier. *See* Tr. 311. He reduced his estimate of the number of hours that Riddle could sit or stand and stated that she could not use her hands for any significant gripping, grasping, or manipulation.

Riddle testified at a March 13, 1997 hearing before the Administrative Law Judge that she spends her time walking, sitting, and reclining. *See* Tr. 45. She performs her own cooking, laundry, grocery shopping, and cleaning. *See* Tr. 46. She testified that she only walks for fifteen minutes before experiencing pain, *see* Tr. 47–49, 52–53; that she can remain seated for no more than twenty to thirty minutes at most, *see* Tr. 48; that she sometimes experiences extreme pain lasting for as long as a week, rendering her unable to move or touch anything, *see* Tr. 50; and that she has experienced this type of extreme pain seven times within the year preceding the hearing, *see* Tr. 50–51. Riddle also testified that she has no significant capacity for gripping, grasping, or manipulation. *See* Tr. 51–52. She did admit,

however, that she could lift as much as ten pounds from the floor. *See* Tr. 48. The Administrative Law Judge further noted that she carried a three-inch binder of papers and a purse to the hearing. *See* Tr. 19, 48.

The Administrative Law Judge found that Riddle's medically determined long-term impairments included fibromyalgia, cervical spondylosis, a herniated cervical disc without radiculopathy, tenosynovitis of both wrists, epicondylitis of both elbows, and tendinitis. *See* Tr. 20. The Administrative Law Judge further found that her mental impairment and hearing loss were not severe. *See* Tr. 18, 22–24. The Administrative Law Judge determined that Riddle could perform light work activities, but that she should not perform rapid alternating hand movements and should avoid neck flexion. *See* Tr. 18, 20.

Vocation expert Thomas Mitchell ("Mitchell") testified that Riddle's past work as a restaurant shift manager was unskilled light work. *See* Tr. 55–56. The Administrative Law Judge then determined that Riddle could perform her past work as a restaurant shift manager or any other suitable job identified by Mitchell. *See* Tr. 19, 20. Therefore, the Administrative Law Judge concluded that Riddle was not disabled. In reaching this conclusion, the Administrative Law Judge expressly discounted the opinion of treating physician Ladin who had opined that Riddle could not work. *See* Tr. 19. The Administrative Law Judge noted that "Dr. Ladin's opinion appears to be based entirely on the claimant's subjective complaints. Fibromyalgia is a rule-out diagnosis. Moreover, Dr. Ladin appeared to focus on whether the claimant was able to do her previous job as a microsectionist, and not whether she was able to perform some other type of work activity requiring less functional capacity." *Id.*

## III. *Discussion*

### A. *Standard of Review*

The decision of the Administrative Law Judge must be affirmed so long as it is supported by substantial evidence in the record as a whole and is free from errors of law. *See* 42 U.S.C. § 405(g); *see also Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.1993); *Matney v. Sullivan,* 981 F.2d 1016, 1018 (9th Cir.1992); *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir.1986) ("The Secretary's decision denying benefits will be disturbed only if it is not supported by substantial evidence or based on legal error").

Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Matney,* 981 F.2d at 1019 (internal quotations and citations omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the [Administrative Law Judge]." *Id.* But the Commissioner's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan,* 143 F.3d 1240, 1243 (9th Cir.1998). Rather, a court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Penny,* 2 F.3d at 956.

### B. *Establishing Disability Under the Social Security Act*

To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d). If a claimant meets both requirements, he or she is "disabled." *See Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir.1999).

The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520. The burden of proof is on the claimant as to steps one to four. *See Tackett,* 180 F.3d at 1098. As to step five, the burden shifts to the Commissioner.[2] If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps. *See id.*

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity?[3] If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id.*

*Tackett,* 180 F.3d at 1098–99. In Riddle's case, the Administrative Law Judge deter-

---

**2.** The Ninth Circuit has noted that "the application of burdens of proof 'is particularly elusive in cases involving social security benefits, in part because the proceedings are not designed to be adversarial.'" *Tackett,* 180 F.3d at 1098 n. 3 (quoting *Donato v. Secretary of Dep't of Health & Human Servs. of the United States,* 721 F.2d 414, 418 [2d Cir. 1983]). The fact that the Administrative Law Judge bears an affirmative duty to assist the claimant in developing the record makes traditional burden of proof concepts a poor fit for understanding the administrative proceeding. *See* 20 C.F.R. § 404.1512(d). Nevertheless, following the Circuit Court's lead, this Court "use[s] the term burden of proof for convenience." *Tackett,* 180 F.3d at 1098 n. 3.

**3.** Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical or mental activities, and gainful, i.e., work activity performed for pay or profit. *See* 20 C.F.R. § 404.1572.

mined that she failed both steps four and five; that is, the Administrative Law Judge determined, based upon the testimony of the vocational expert, that Riddle could either perform her past work as a restaurant shift manager (step four) or a number of other gainful employment opportunities defined by Mitchell as "light work" (step five). *See* Tr. 19, 20.

### C. *Analysis*

■ The parties' disagreement centers on the express decision of the Administrative Law Judge to discount the testimony of Ladin. *See* Tr. 19. Riddle contends that "[a]s Dr. Ladin is a treating source, having seen the claimant since April 24, 1995 through 1997, his opinion must be given great weight unless there is ... substantial evidence to the contrary within the record." Riddle Mem. at 6; *see also Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983) ("If the [Administrative Law Judge] wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record"). The Administration responds that the decision was based upon substantial evidence in the record.

The Administrative Law Judge rejected Ladin's April 1996 conclusion that Riddle was "totally disabled" because she felt that Ladin's own findings on the physical capacities evaluation form contradicted that conclusion:

> To the undersigned, Dr. Ladin's findings seem inconsistent. One the one hand, he indicated there was to be "no heavy lifting, frequent repositioning of the upper extremities, no repetitive work with the upper extremities," and yet, on the other hand, Dr. Ladin indicated the claimant was "totally disabled." Dr. Ladin's initial comments make more sense. That is, there was to be no heavy lifting, frequent repositioning of the upper extremities, or repetitive work with the upper extremities. Such restrictions are somewhat in line with the weight of the evidence. However, to say the claimant

is "totally disabled" because she is unable to do heavy lifting or frequently repositioning of her upper extremities is a gross exaggeration. To be sure, the claimant has limitations. This, however, does not mean she is unable to work. Tr. 18. The Administrative Law Judge also discounted Ladin's August 1996 letter to Riddle's insurance carrier, in which he revised downward his estimate of her functioning capacity, apparently because the letter was not based upon any new medical findings. *See id.*

The Administrative Law Judge was justified in discounting the opinion of Ladin. Although Riddle is correct that the Ninth Circuit in *Murray* instituted a requirement that Administrative Law Judges offer specific reasons for discounting the testimony of a treating physician, this requirement is not insurmountable. As the Ninth Circuit noted two years after *Murray*, the decision of the Administrative Law Judge to credit some medical testimony over other conflicting reports is entitled to deference by a reviewing federal court:

> [When] there [i]s a conflict in the medical reports and testimony ..., the findings of the [Administrative Law Judge] are supported by substantial evidence. *See Allen*, 726 F.2d at 1473; *Galli v. Celebrezze*, 339 F.2d 924, 925 (9th Cir. 1964); *see also Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir.1971) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made").

\* \* \* \* \* \*

To read *Murray* ... broadly as an absolute requirement that the [Administrative Law Judge] must state "clear and convincing reasons" in all situations in which he favors the testimony of a consultative physician over that of the claimant's treating physicians would be contrary to the spirit of the principles expounded by the Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

\* \* \* \* \* \*

We should not disturb these principles either by second-guessing the determination of the [Administrative Law Judge] with regard to the credibility of the medical testimony offered or by imposing burdensome procedural requirements that facilitate such second-guessing.

*Allen v. Heckler,* 749 F.2d 577, 579–80 (9th Cir.1984).

In the instant case, the "conflict" in the medical testimony existed entirely within Ladin's report, which seemed to equate certain restrictions on heavy lifting and movement of the upper extremities with "total disability." The Administrative Law Judge was not required to accept Ladin's conclusion with respect to the ultimate issue of disability. *See* 20 C.F.R. § 404.1527(e); *Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir.1985) (as amended) ("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the [Administrative Law Judge]"). Instead, it was entirely proper for the Administrative Law Judge to accept, on the one hand, Ladin's conclusions of fact with respect to Riddle's physical limitations and, on the other hand, Mitchell's conclusions with respect to the legal and vocational significance of those limitations. *See Saelee v. Chater,* 94 F.3d 520, 523 (9th Cir.1996) (Administrative Law Judge did not abuse discretion by discounting treating physician's conclusions regarding disability because her decision that "report was untrustworthy [i]s a permissible credibility determination").

Riddle also challenges the failure of the Administrative Law Judge to credit the subjective pain complaints of the claimant. *See* Riddle Mem. at 7. In the Ninth Circuit, however, "if the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." *Bunnell v. Sullivan,* 947 F.2d 341, 346 (9th Cir.1991) (en banc) (citing *Fair v. Bowen,*

885 F.2d 597, 603 [9th Cir.1989]). In the instant case, the Administrative Law Judge determined that Riddle takes walks, cooks, does laundry, shops for groceries, babysits her grandchildren, and undertakes an "active exercise program." Tr. 14, 16, 17, 19, 45–46. The Administrative Law Judge made specific findings regarding Riddle's daily life activities and concluded that, using "ordinary techniques of credibility evaluation," *Bunnell,* 947 F.2d at 346, Riddle's testimony of subjective pain was insufficient grounds for finding her disabled. Put simply, this Court must accept that interpretation as it is a rational one, based on all the evidence in the record. *See Andrews v. Shalala,* 53 F.3d 1035, 1039–40 (9th Cir.1995).

## IV. *Conclusion*

For the foregoing reasons, the Court DENIES Riddle's motion for summary judgment (Docket # 8) and GRANTS the Administration's cross-motion for summary judgment (Docket # 11).

SO ORDERED.

## *JUDGMENT*

Pursuant to the Memorandum and Order of December 17, 1999, judgment shall, and hereby does, enter for the Defendants.