**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BEATRIZ V. LOUNSBURRY,
        *Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,
        *Defendant-Appellee.*

No. 04-15690

D.C. No.
CV-02-03956-JSW

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
February 17, 2006—San Francisco, California

Filed September 20, 2006
Amended November 7, 2006

Before: Procter Hug, Jr., Arthur L. Alarcón, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Hug

18247

## COUNSEL

Kelly Dunn, Richmond, California, for the appellant.

Sarah Ryan, Assistant Regional Counsel, United States Social Security Administration, San Francisco, California, for the appellee.

## ORDER

The Opinion filed on September 20, 2006, is amended as follows: on slip opinion page 11744, lines 1-3, delete the following text:

An individual with both exertional and non-exertional limitations cannot, however, be found "nondisabled" based only on the grids.

## OPINION

HUG, Circuit Judge:

Beatriz V. Lounsburry ("Lounsburry") appeals the district court's judgment affirming the Commissioner of Social Security's decision to deny her disability benefits under Title II of the Social Security Act. Lounsburry's application for benefits was denied initially and on reconsideration, and Lounsburry requested a hearing before an administrative law judge ("ALJ"). The ALJ found that although Lounsburry had severe exertional and non-exertional impairments that precluded her performing her previous work, these impairments were not disabling because they did not preclude Lounsburry from performing a single occupation that existed in significant numbers in the economy. Lounsburry contends that the ALJ committed legal error because Rule 202.00(c) of the Medical-Vocational Guidelines, as applied to the ALJ's uncontested findings of fact, directs as a matter of law a determination that Lounsburry is disabled. We agree, and hereby REVERSE and

REMAND WITH INSTRUCTIONS for the payment of bene-
fits.

## I.  Factual And Procedural Background

On February 24, 2000, Lounsburry filed a claim for Social
Security Disability Insurance ("SSDI") under Title II of the
Social Security Act, 42 U.S.C. §§ 401 *et seq.* Lounsburry
alleged that her disability arose on August 16, 1999, when she
was sixty-two years of age. As the basis of her disability,
Lounsburry alleged "easy fatigue, pains & discomforts on
[the] upper and lower extremities, severe pain in both hips,
joints, back & shoulder, not feeling well at times, [and] bunio-
nous . . . toes." A series of medical evaluations between May
1999 and December 2000 resulted in diagnoses of (1) degen-
erative joint disease, resulting in chronic bilateral lower
extremity, knee, ankle, heel, and foot pain, and pain in the
lumbar spine, (2) adult-onset diabetes mellitus, (3) hyperten-
sion, and (4) sick sinus syndrome — for which Lounsburry
received a permanent dual-chamber pacemaker implant.

Lounsburry completed high school and two years of post-
secondary education. She was employed as a certified nurse's
assistant from October 1985 to May 1999 and was employed
as a certified home health aide from June 1998 to November
1999. She has not engaged in substantial gainful activity at
any time since the alleged onset of her disability.

Lounsburry's application for social security disability
insurance was denied initially and on reconsideration. At the
hearing before the ALJ on November 20, 2001, medical-
vocational testimony revealed Lounsburry to have the residual
functional capacity to perform "light work," defined as lifting
and/or carrying 15 pounds frequently and 25 pounds occa-
sionally. A vocational expert ("VE") indicated that Louns-
burry also had postural limitations preventing her from
repetitive stooping, crouching, crawling, kneeling, and climb-
ing activities. Because Lounsburry's past relevant work as a

certified nurse's assistant requires a medium exertional capacity, the VE testified she would not be able to return to that job. The VE did find, however, that Lounsburry's past work was semi-skilled and involved skills transferable to other work. Specifically, the VE identified four jobs that Lounsburry could do, but in response to interrogatories propounded by the ALJ, later eliminated all but one as requiring more than "very little [vocational] adjustment," pursuant to the requirements of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, Rule 202.00(f) ("the grids").

The VE identified the remaining occupation, "companion," as semi-skilled, requiring light exertional capacity and very little vocational adjustment. He testified that 1,639 companion positions exist in the local economy, and 65,855 nationally. The ALJ followed the five-step sequential evaluation required by 20 C.F.R. § 404.1520. He determined in his written decision dated March 25, 2002 that Lounsburry was not disabled.[1]

The Social Security Appeals Council declined review and adopted the ALJ's decision as the final decision of the Commissioner. Having exhausted her administrative remedies, Lounsburry sought review in the Northern District of California. District Judge White rejected Lounsburry's argument that the ALJ was required to apply the Medical-Vocational Guidelines directly, including Rule 202.00(c), denied her motion for summary judgment, and granted the Commissioner's cross-motion for summary judgment, thereby upholding the ALJ's decision.

---

[1]The ALJ determined that Lounsburry (1) was not participating in substantial gainful activity; (2) had severe impairments; (3) did not have impairments meeting the criteria of 20 C.F.R. pt. 404, subpt. P, app.1; (4) possessed a residual functional capacity for only light work limited by postural restrictions and was thus unable to perform "past relevant work;" and (5) could make the adjustment to other work that existed in significant numbers in the national economy because she had skills transferable to the occupation "companion."

## II.   A Medical-Vocational Guidelines Analysis

We review *de novo* the decision of the district court affirming the decision of the ALJ. *Aukland v. Massanari*, 257 F.3d 1033, 1034-1035 (9th Cir. 2001). We may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). In this appeal we are called on to determine Lounsburry's disability status under the Medical-Vocational Guidelines, commonly referred to as the grids. 20 C.F.R. Part 404, Subpt. P, App. 2.

**[1]** The Ninth Circuit articulated the five-step sequential process for determining whether a claimant is "disabled" in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). The five steps are as follows:

> *Step 1*: Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "*not disabled*" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

> *Step 2*: Is the claimant's impairment severe? If not, then the claimant is "*not disabled*" and is not entitled to benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

> *Step 3*: Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "*disabled*" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the

impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

*Step 4*: Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "*not disabled*" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

*Step 5*: Is the claimant able to do any other work? If not, then the claimant is "*disabled*" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "*not disabled*" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

*Id.*; *see also Tackett*, 180 F.3d 1098-99.

**[2]** The grids are applied at the fifth step of the analysis under 20 C.F.R. § 404.1520, and present, in table form, a

short-hand method for determining the availability and numbers of suitable jobs for a claimant. *Tackett,* 180 F.3d at 1101. The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress—a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. *Id.* If a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983).

However, the grids are predicated on a claimant suffering from an impairment which manifests itself by limitations in meeting the strength requirements of jobs ("exertional limitations"); they may not be fully applicable where the nature of a claimant's impairment does not result in such limitations ("non-exertional limitations"). 20 C.F.R. Part 404, Subpart p, Appx. 2 § 200.00(e); 30 Fed. Proc., L. Ed. § 71:205. The reason for this limitation on the grids' application is that, despite having the residual functional capacity to perform a full range of unskilled occupations at a given exertional level, a claimant may not be able to adjust to these jobs because of non-exertional limitations. Soc. Sec. Rul. 83-10 (January 1983). In particular, non-exertional impairments — including postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching—may, if sufficiently severe, limit a claimant's functional capacity in ways not contemplated by the grids. 20 C.F.R. § 404.1569; *Tackett*, 180 F.3d at 1101-02 (*quoting Desrosiers v. Sec'y of Health & Human Servs*., 846 F.2d 573, 577 (9th Cir. 1988) (Pregerson, J., concurring)). Thus, the *Tackett* court held that "[t]he grids should be applied only where a claimant's functional limitations fall into a standardized pattern 'accurately and completely' described by the grids." *Id.* at 1103; *see also*

*Burkhart*, 856 F.2d 1335, 1340 (9th Cir. 1988) (concluding that the use of "the grids will be inappropriate where the predicate for using the grids — the ability to perform full range of either medium, light or sedentary activities—is not present.").[2]

**[3]** Application of the grids is not discretionary here. Where a claimant suffers only exertional limitations, the ALJ must consult the grids. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989). Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. *Id*. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first. *Id*. However, the grids provide that:

> where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in *determining first whether a finding of disabled may be possible based on the strength limitations alone. . . .*

20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2) (2006) (emphasis added). And conspicuously, "[W]here application of the grids directs a finding of *disability*, that finding must be accepted by the Secretary . . . whether the impairment is exertional or results from a combination of exertional and non-exertional limitations." *Cooper v. Sullivan*, 880 F.2d

---

[2]*Tackett*'s bar on exclusive reliance on the grids is limited by its requirement that the nonexertional impairments invoked must be significant enough to limit further the range of work permitted by exertional limitations before precluding application of the grids. *Tackett*, 180 F.3d at 1104; *Desrosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). Although the ALJ had not determined Lounsbury's postural restrictions were severe, the district court reasoned that this element could be inferred, and the "ALJ was not required to use the grids because Lounsbury's non-exertional limitations made it such that her abilities were not completely and accurately represented by the grid."

1152, 1157 (9th Cir. 1989) (emphasis added). Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and non-exertional impairments, they may not be used to direct a conclusion of *nondisability*.[3] *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999). In other words, where a person with exertional and non-exertional limitations is "disabled" under the grids, there is no need to examine the effect of the non-exertional limitations. But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately.

Here, the ALJ declined to apply the grids, except as an advisory framework, because Lounsburry's residual functional capacity was further reduced by her severe non-exertional, postural limitations. This was error; the ALJ should have first inquired if Lounsburry was disabled under the grids on the basis of her exertional limitations alone. The ALJ also relied on testimony from the vocational expert in concluding that Lounsburry was not disabled. This was also error; the ALJ should not have substituted extrinsic evidence for the mandatory analysis under the grids.

It is Social Security Administration policy that the ALJ may not look to other evidence to rebut this conclusion. Soc. Sec. Rul. 83-5a. Under no circumstances may a vocational expert's testimony supplant or override a disability conclusion dictated by the Guidelines. *See Swenson v. Sullivan*, 876 F.2d 683, 688 (9th Cir. 1989). In other words, the grids serve as a ceiling. establishing a claimant's maximum functional capacity. *Cooper*, 880 F.2d at 1156. Before turning to a vocational

---

[3]The cases cited by the Commissioner for the proposition that the ALJ was entitled to bypass the grids are inapplicable because they "hold only that [the Commissioner] may not rely solely on the grids to *deny* benefits when additional impairments detract from a claimant's ability to work." *Cooper* v. *Sullivan,* 880 F.2d 1152, 1156 (9th Cir. 1989) (emphasis added).

expert, the ALJ should have analyzed whether Lounsburry's exertional impairments were enough, by themselves, to warrant a finding of disabled.

### III. Assessing Lounsburry Under the Grids

With the benefit of a complete analysis under the grids, it is clear that Lounsburry is disabled. The ALJ's factual findings are not in dispute. Lounsburry's residual functional capacity to perform light work prevents her return to past work but includes some transferable skills. Ignoring Lounsburry's non-exertional limitations, we hold that this medical-vocational profile qualifies Lounsburry as disabled.

**[4]** Because she has transferrable skills, Lounsburry's case is controlled by grid Rule 202.07, which generally directs a finding of "not disabled." However, the ALJ misapplied Rule 202.07 by failing to consider fully the effect of Rule 202.00(c). Footnote (2) to Rule 202.07 explicitly incorporates language from Rule 202.00(c) that expands the circumstances under which claimants with transferable skills can be found disabled. Rule 202.00(c) provides:

> (c) However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have *only skills that are not readily transferable to a significant range of semi-skilled or skilled work* that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work *warrant a finding of disabled*.
> (emphasis added)

Under Rule 202.00(c), although Lounsburry has some transferable skills, she will be disabled if those skills "are not readily transferable to a significant range of semi-skilled or

skilled work." Thus, the specific issue we confront is the meaning of the phrase "significant range of work." The Commissioner takes the position that the term "work" refers to individual *jobs*, and the phrase "significant range" only requires Lounsbury to adjust to other work existing in significant numbers in the national economy in one or more occupations. However, the term "work" under Rule 202.00(c) means distinct *occupations*, and "significant numbers" is no substitute for and cannot satisfy the plain language of Rule 202.00(c) requiring a "significant *range* of . . . work" (emphasis added).

**[5]** Social Security Ruling 83-10 (1983) ("SSR 83-10") "address[es] the issue of capability to do other work" by providing "definitions of terms and concepts frequently used in evaluating disability under the medical-vocational rules." *Id.* at *1. *Id.* At 17. SSR 83-10 defines the phrase, "Range of Work," as "*Occupations* existing at an exertional level." It defines the related phrase, "Full Range of Work," as: "All or substantially all *occupations* existing at an exertional level." *Id.* at *16 (emphasis added). We thus construe the phrase "significant range of . . . work" in Rule 202.00(c) to require a significant number of occupations. The record in this case establishes that Lounsbury's skills would transfer to precisely one occupation at her residual functional capacity. One occupation does not constitute a significant range of work. Rule 202.00(c) directs a finding of disability for Lounsbury.

The Commissioner's reliance on 20 C.F.R. § 404.1566(b) (2004), which provides that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations)," is misplaced. In whatever manner "work" is defined, Rule 202.00(c) demands a "significant range of" it. To interpret "significant range of . . . work" to mean simply "work" nullifies the concept of "range" contained in the text. Congress might have drafted Rule 202.00(c) to require only a "significant number of jobs"; it chose not to do so.

Furthermore, 20 C.F.R. § 404.1566(b) is inapplicable to Lounsburry's case. It defines "work" at a high level of generality and only to operationalize the broad definition of disability articulated by the Commissioner in interpreting a different statute 42 U.S.C. § 423(d)(2)(A).[4] However, the purpose of the grids is to individualize the disability determination process; the grids supply the test for satisfying § 423(d)(2)(A) in particular cases. The Commissioner may not substitute a definition of disability applicable generally for one narrowly tailored by the grids to Lounsburry's circumstances.

For the foregoing reasons, Lounsburry is disabled under the Medical-Vocational Guidelines and eligible to receive disability insurance benefits as a matter of law.

REVERSED and REMANDED WITH INSTRUCTIONS for the payment of benefits.

---

[4]Section 423(d)(2)(A) provides:

An individual *shall be determined to be under a disability only if* his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . . For purposes of the preceding sentence (with respect to any individual), "*work which exists in the national economy*" means work which exists in *significant numbers* either in the region where such individual lives or in several regions of the country." (emphasis added).