RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0091p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

KEELEY HAMILTON,

                  *Plaintiff-Appellant*,

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

                  *Defendant-Appellee*.

No. 23-1466

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-10066—Mark A. Goldsmith, District Judge.

Decided and Filed: April 17, 2024

Before: McKEAGUE, LARSEN, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Paul Renzo, Dearborn, Michigan, for Appellant. David I. Blower, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.

─────────────────

## OPINION

─────────────────

PER CURIAM. An administrative law judge denied Keeley Hamilton's applications for disability insurance benefits and supplemental security income because, despite her physical impairments, she could still work in *two* occupations. On appeal, Hamilton relies on Ninth Circuit caselaw to seek a categorical rule that would treat her as disabled unless she could work in at least *three* occupations. We disagree with the Ninth Circuit's rule. So we affirm the district court's decision upholding the Social Security Administration's denial of benefits to Hamilton.

I.

After graduating from high school, Hamilton eventually took a job with Kohl's.  She worked many years as a retail cashier or on the floor for this department store.  On December 28, 2015, however, Hamilton's physical ailments forced her to quit her job when she was 56 years old.

In March 2017, Hamilton sought disability insurance benefits and supplemental security income from the Social Security Administration (which we will call the "Administration" for short).   In her applications, Hamilton asserted that she suffered from several physical impairments: degenerative disc disease, left cubital tunnel syndrome, and obesity.  Hamilton also asserted that she had become disabled on the date of her last day of work.

Hamilton's applications progressed to an evidentiary hearing before an administrative law judge (ALJ) within the Administration.  Hamilton and a vocational expert testified at her hearing.

The ALJ denied Hamilton's applications using the Administration's five-step evaluation sequence for determining whether an applicant qualifies as "disabled" under the Social Security Act.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At the first two steps, the ALJ found that Hamilton had not engaged in substantial gainful activity since the alleged onset of her disability and that she had severe impairments that limited her ability to work.  *See id.* § 404.1520(a)(4)(i)–(ii).  At the third step, the ALJ found that she did not automatically qualify as disabled because her impairments did not meet or equal a listed impairment.  *See id.* § 404.1520(a)(4)(iii).  At the fourth step, the ALJ found that Hamilton had the "residual functional capacity" to perform light work with some restrictions that do not matter in this appeal.  The ALJ added that this functional capacity would not permit Hamilton to undertake her prior cashier position because that job had required a "medium" level of exertion.  *See id.* § 404.1520(a)(4)(iv).

This case thus turned on the fifth step, which asks whether Hamilton could "make an adjustment to other work."  *Id.* § 404.1520(a)(4)(v).  At 56 years old, Hamilton qualified as a "[p]erson of advanced age" at the alleged onset of her disability.  *See id.* § 404.1563(e).  Accordingly, § 202.00(c) of the Administration's "Medical Vocational Guidelines" directed the

ALJ to find Hamilton disabled unless she had "skills" that were "readily transferable to a significant range of semi-skilled or skilled work" falling within her identified light-work functional capacity. 20 C.F.R. pt. 404, sub. pt. P, app. 2, § 202.00(c); *see id.* §§ 202.00(e), 202.06, 202.07. Relying on the vocational expert's testimony, the ALJ found that Hamilton's prior cashier position had given her transferrable work skills, including cashiering and payment processing. The ALJ also determined that these skills permitted Hamilton to switch to two semi-skilled sedentary occupations: food checker and auction clerk. Because jobs in these two general fields existed "in significant numbers in the national economy," the ALJ concluded that Hamilton was not disabled and denied her applications. *Id.* § 404.1560(c).

After exhausting her administrative remedies, Hamilton sought the district court's review of the ALJ's decision. The district court concluded that substantial evidence did not support the ALJ's decision. The court reasoned that the ALJ mistakenly failed to ask the vocational expert whether any conflicts existed between his testimony and the occupational information in the Dictionary of Occupational Titles. *See* S.S.R. 00-4p, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000). The district court remanded the case to the Administration for further proceedings.

On remand, the ALJ held another evidentiary hearing. The vocational expert repeated his conclusions that Hamilton's past job as a retail cashier was a semi-skilled position that had given her transferable skills. He also explained any differences between his testimony and the Dictionary of Occupational Titles. He next reiterated that Hamilton's light-work functional capacity allowed her to transition to the food-checker and auction-clerk fields. He estimated that there were around 64,000 of these jobs in the national economy. He added that Hamilton could perform the food-checker position in a range of work settings, from hospital and office cafeterias to small restaurants. He also noted that auction clerks could work in both retail and wholesale.

In post-hearing briefing, Hamilton argued that § 202.00(c) of the Medical Vocational Guidelines required the ALJ to find that her skills would transfer to at least three skilled or semi-skilled occupations before the ALJ could conclude that she was not disabled. Hamilton based this interpretation of § 202.00(c) on two out-of-circuit cases, *Lounsbury v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006), and *Maxwell v. Saul*, 971 F.3d 1128 (9th Cir. 2020). If this categorical rule applied, Hamilton also argued, she was disabled. Even though she had the

residual functional capacity to undertake some 64,000 jobs in the national economy, she reasoned that those thousands of jobs did not extend beyond just *two* occupations: food checker and auction clerk.

The ALJ denied Hamilton's applications a second time. He concluded again that Hamilton's skills permitted her to perform the food-checker and auction-clerk positions and that these jobs exist in significant numbers in the national economy. In the process, he rejected Hamilton's argument that "a significant range of . . . work" under § 202.00(c) required more than two occupations. The ALJ explained that the Administration had not accepted the Ninth Circuit's decisions in *Lounsbury* and *Maxwell*. He also found as a fact that the food-checker and auction-clerk occupations represent "a significant range of work" because Hamilton could perform the work in diverse settings.

Hamilton did not object to the ALJ's opinion with the Administration's Appeals Council. The Appeals Council also did not assume jurisdiction over Hamilton's case within 60 days. *See* 20 C.F.R. §§ 404.984, 416.1484. The ALJ's opinion thus became the Administration's final decision after the 60-day period expired. *See* 20 C.F.R. §§ 404.984(a), 416.1484(a).

Hamilton returned to the district court. She renewed her interpretation of § 202.00(c) of the Medical Vocational Guidelines. That is, she argued that the ALJ should have found her disabled because his findings showed that her skills did not transfer to at least three occupations.

The district court rejected Hamilton's reading of § 202.00(c). Among other things, the court explained that it need not follow the Ninth Circuit's nonbinding decisions in *Lounsbury* and *Maxwell*. It also noted that, according to the Administration's Program Operations Manual System, "fewer than three occupations" may suffice for a "not disabled" finding when "it is clear that jobs exist in significant numbers within" those occupations.

Hamilton appealed. We review the district court's decision de novo. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009). When reviewing the ALJ's decision, by comparison, we ask whether he applied the correct legal standards and supported his factual findings with substantial evidence. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 903 (6th Cir. 2016). We thus review the ALJ's legal rulings (including his interpretation of the

relevant laws and regulations) de novo. *See Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

## II.

On appeal, Hamilton primarily argues that the ALJ could find that she lacked a disability under § 202.00(c) of the Medical Vocational Guidelines only if she had skills that transferred to at least three "occupations." And because the ALJ identified only two occupations that she could still perform, she claims that he legally erred by finding her not disabled. We disagree.

## A.

To explain our reasons, we start with the legal backdrop. The Social Security Act defines "disability" to mean the "inability to engage in any substantial gainful activity" because of an impairment that will likely last for at least 12 months. 42 U.S.C. § 423(d)(1)(A); *see id.* § 416(i)(1)(A). It further clarifies that applicants qualify as disabled only if they cannot do *both* their past work *and* "any other kind" of work that exists in the national economy:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A). The Act also defines "work which exists in the national economy" to "mean[] work which exists *in significant numbers* either in the region where such individual lives or in several regions of the country." *Id.* (emphasis added).

The Act gives the Administration (technically, the Social Security Commissioner) the authority to issue "regulations" to "carry out" these provisions. *Id.* § 405(a); *Heckler v. Campbell*, 461 U.S. 458, 465–66 (1983). Exercising this authority, the Administration has adopted its "five-step" process to evaluate disability claims. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 404.1520(a)(4). If applicants make it to step five, they qualify as disabled unless the Administration proves that they can "make an adjustment to other work" when

considering their "residual functional capacity" (which measures the activities they can still do) along with their "age, education, and work experience[.]" 20 C.F.R. § 404.1520(a)(4)(v); *see id.* § 404.1560(c)(2).

Historically, the Administration used "vocational experts" to decide whether applicants could perform other work on a case-by-case basis. *Heckler*, 461 U.S. at 461. In 1978, however, it adopted the Medical Vocational Guidelines to set uniform rules that applied to different combinations of work capacities, ages, educations, and work experiences. *See id.* at 461–62; *see also* 20 C.F.R. § 404.1569. In that respect, § 202.00(c) of these guidelines sets a uniform rule for individuals of "advanced age" who have the capacity to perform light work. It provides:

> [F]or individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, *or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity*, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.

*Id.* pt. 404, sub. pt. P, app. 2, § 202.00(c) (emphasis added). Other regulations define "advanced age" as 55 or older and describe the way that the Administration will decide whether these individuals have transferable skills. *Id.* §§ 404.1563(e), 404.1568(d)(1)–(4).

## B.

The parties share much common ground about how § 202.00(c) operates here. They agree that Hamilton qualifies as an individual of "advanced age" and that she can no longer perform her past cashier work. Further, they accept the ALJ's findings that Hamilton has a residual functional capacity that allows her to perform light work (with restrictions that do not matter now) and that her past cashier work qualified as "semi-skilled." The parties also do not dispute the ALJ's finding that Hamilton's cashier skills were "readily transferrable" to the food-checker and auction-clerk occupations. And Hamilton does not challenge the ALJ's finding that 64,000 of these jobs exist in the United States or that this number shows that the jobs "exist in significant numbers in the national economy[.]" *Id.* § 404.1560(c)(1); *see Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022) (32,000 jobs); *Taskila*, 819 F.3d at 905 (6,000 jobs).

This case thus hinges on a narrow question: What does § 202.00(c) mean when it states that an ALJ must find applicants like Hamilton disabled unless they have skills that are "readily transferable to a significant range of semi-skilled or skilled work that is within [their] functional capacity"?   20 C.F.R. pt. 404, sub. pt. P, app. 2, § 202.00(c).   Hamilton interprets the word "work" in this phrase to mean "occupation."   She then suggests that three occupations represent the minimum number that an ordinary English speaker would describe as a "significant range" of occupations.  *See Maxwell*, 971 F.3d at 1131–32.   The Administration counters that a single occupation with many different types of jobs itself can encompass a "significant range of work."

We agree with the Administration.   Courts must determine a regulation's meaning by starting with its text.  *See Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, 32 F.4th 548, 557 (6th Cir. 2022).   We thus must ask what § 202.00(c) conveys by its use of the word "work."   We see three possibilities with slightly different connotations.

Possibility One: The word "work" can refer to "[p]hysical or mental effort or activity directed toward the production or accomplishment of something"—that is, the actual "labor" employees must undertake on the job.  *American Heritage Dictionary of the English Language* 1474 (1976).   Take the activities of carpenters.   Depending on the job, their work might require them to "[i]nstall structures and fixtures" or "[m]easure, cut, and shape wood, plastic, and other materials."   Bur. of Lab. Stats., *Carpenters*, Occupational Outlook Handbook, *available at* https://www.bls.gov/ooh/construction-and-extraction/carpenters.htm#tab-2.   Or take the activities of lawyers.   Again depending on the job, their work might require them to "represent clients in criminal or civil proceedings" or "[p]repare" "legal documents" like "contracts" or "wills."   Bur. of Lab. Stats., *Lawyers*, Occupational Outlook Handbook, *available at* https://www.bls.gov/ooh/legal/lawyers.htm#tab-2.   The Administration sometimes uses "work" in this "activities" sense.   One regulation, for example, relies on the word to catalogue different levels of labor, ranging from least strenuous ("[s]edentary work") to most ("[v]ery heavy work").   20 C.F.R. § 404.1567.   This regulation defines "[l]ight work" to mean, among other things, "frequent lifting or carrying of objects weighing up to 10 pounds" and a "good deal of walking or standing[.]"  *Id.* § 404.1567(b).   And it says that applicants can perform a "full or wide range of light work" if they can "do substantially all of these *activities*."  *Id.* (emphasis added).

Possibility Two: The word "work" can also refer to one's "[e]mployment"—that is, the specific "job" that an employee holds. *American Heritage*, *supra*, at 1474. The Administration generally uses the word in this "job" sense at the fifth step of its evaluation sequence when deciding whether applicants can "make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). As we have explained, this step requires the Administration to prove "that other work exists in significant numbers in the national economy that [an applicant] can do, given [the applicant's] residual functional capacity and vocational factors" (age, education, and work experience). *Id.* § 404.1560(c)(2). Regulations discussing this fifth step repeatedly equate this use of "work" with "jobs" rather than "activities." One notes that "[a]ny other work (*jobs*) that you can adjust to must exist in significant numbers in the national economy[.]" *Id.* § 404.1560(c)(1) (emphasis added). Another notes that "[w]ork exists in the national economy when there is a significant number of *jobs* (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." *Id.* § 404.1566(b) (emphasis added).

Possibility Three: The word "work" can lastly refer to "[t]he means by which one earns one's livelihood"—that is, an employee's general occupation or profession. *American Heritage*, *supra*, at 1474. When used at this higher level of generality, the word encompasses not just an employee's specific job but also similar jobs with "variations" in their duties. S.S.R. 96-9p, 1996 WL 374185, at *3 n.4 (S.S.A. July 2, 1996). As the Administration has noted, "[e]ach occupation represents numerous jobs." S.S.R. 00-4p, 2000 WL 1898704, at *2. The occupation of "lawyer," for example, can include many legal positions, ranging from a criminal-defense lawyer to a transactional attorney. *See Lawyer*, Occupational Outlook Handbook, *supra*. And the occupation of "carpenter" can include the job of "rough carpenter," among others. S.S.R. 96-9p, 1996 WL 374185, at *3 n.4.

Which meaning does the text of § 202.00(c) signal? Again, it asks whether an individual's work "skills" are "readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity[.]" 20 C.F.R. pt. 404, sub. pt. P, app. 2, § 202.00(c). Given this language, neither party argues for the first possible meaning of work ("[p]hysical or mental effort or activity"). We agree that this meaning does not fit

§ 202.00(c)'s context. *American Heritage*, *supra*, at 1474. The section seeks to evaluate whether applicants of advanced age can use their skills to seek other "employment"—not whether they can use their skills to conduct various "activities" in the abstract. *Id.*

That conclusion leaves us with a choice between "jobs" and "occupations." In our view, the regulatory context leaves no doubt that § 202.00(c) refers to "jobs." Recall that the Medical Vocational Guidelines help the Administration decide whether applicants can perform other work at step five of its evaluation sequence. *See Heckler*, 461 U.S. at 460–62. At that step, the regulatory scheme consistently equates "work" with "jobs"—not "occupations." The scheme expressly uses the word "jobs" as a synonym for the word "work." 20 C.F.R. § 404.1560(c)(1). And it makes clear that "[w]ork exists in the national economy" as long as a "significant number of *jobs*" exist—even if all those jobs fall into "*one*" occupation. *Id.* § 404.1566(b) (emphasis added). Since the Administration uses "work" to mean "jobs" in all other regulations discussing step five, the Medical Vocational Guidelines are most naturally read to contain the same meaning.

Other parts of the Medical Vocational Guidelines likewise suggest that the inquiry focuses on the *jobs*—not the *occupations*—that applicants can undertake. One subsection, for example, notes that the Administration will not treat as disabled younger applicants who can perform light unskilled work because these applicants can adjust to "substantial numbers of unskilled *jobs*[.]" 20 C.F.R. pt. 404, sub. pt. P, app. 2, § 202.00(b) (emphasis added). Another suggests that "illiterate" "younger individuals" who can perform light work are not disabled because they have "the capability for substantial numbers of such *jobs*." *Id.* § 202.00(g) (emphasis added). It would be strange for other subsections within the Medical Vocational Guidelines to turn on an applicant's ability to undertake a substantial number of other *jobs* but for § 202.00(c) to turn on the applicant's ability to undertake a substantial number of other *occupations*.

A broader statutory point reinforces this conclusion. If we required proof that applicants could switch to three occupations even if millions of jobs existed in just one of them, we would risk putting this regulation on a collision course with the "plain language of the governing statute[.]" *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6th Cir. 2000). The Social

Security Act makes clear that applicants do not qualify as disabled simply because they cannot engage in their "previous work[.]" 42 U.S.C. § 423(d)(2)(A). To qualify as disabled, applicants instead must be unable to "engage in *any other kind* of substantial gainful work which exists in the national economy[.]" *Id.* (emphasis added). Hamilton's proposed rule—that ALJs should treat applicants as disabled unless they can work across three occupations—likely conflicts with this text. After all, it is hard to see how someone eligible to work at 64,000 jobs across two fields could not engage in "*any* other kind" of work. *Id.* (emphasis added).

Our (admittedly, unpublished) precedent also supports our conclusion. *See Geiger v. Apfel*, No. 99-5590, 2000 WL 1257184, at *2 (6th Cir. July 10, 2000). *Geiger* considered whether a commercial airline pilot who had been injured on the job had skills that could transfer "to a 'significant range' of work." *Id.* A vocational expert had testified that the pilot could transition to "general dispatcher-type positions" and that about 75,000 of these positions existed in the national economy. *Id.* at *1. We upheld the Administration's denial of benefits based on these opinions—even though a "dispatcher" likely represented just one occupation. *See id.* at *2.

A contextual factor points the same way. If we interpret "work" to mean "job," we would set an objective marker tied to the employment positions that exist in this country. If, by contrast, we interpret "work" to mean "occupation," we would set a subjective benchmark that requires an inquiry into which jobs fall into which occupations. That view could necessitate difficult line-drawing problems. Indeed, the Department of Labor's Occupational Outlook Handbook (a source on which the Administration relies) defines some occupations broadly and others narrowly. *See* 20 C.F.R. § 404.1566(d)(5). It, for example, lumps all "lawyers" together into a single occupation. *See Lawyers*, Occupational Outlook Handbook, *supra*. But it divides "clerks" into many occupations, including general office clerk, information clerk, and material recording clerk. *See* Bur. of Lab. Stats., *Information Clerks*, Occupational Outlook Handbook, *available at* https://www.bls.gov/ooh/office-and-administrative-support/information-clerks.htm#tab-8. No reasonable reader of the word "work" in § 202.00(c) would conclude that a disability finding should rest on the level of generality at which an ALJ defines an "occupation." That view might force ALJs to treat applicants as disabled because they could switch to only one occupation—even if the occupation contained millions of available positions. And that view

might force ALJs to treat other applicants as not disabled because they could switch to three occupations—even when the occupations contained only a few thousand jobs each.

Having read "work" to refer to "jobs," we next must confront what § 202.00(c) means by "significant range." The Administration's other step-five regulations (and the Social Security Act) use a different phrase by evaluating whether a "*significant number* of jobs" exist in the national economy. 20 C.F.R. § 404.1566(b) (emphasis added); 42 U.S.C. § 423(d)(2)(A). Perhaps § 202.00(c) adopted the same approach, and the Administration chose the phrase "significant range" rather than "significant number" to respect basic rules of grammar. If the Administration sought to keep the word "work" (a statutory term), it would have made no sense to say "significant number of work." Or perhaps the Administration meant to depart from this numbers inquiry altogether by asking whether an applicant's skills would transfer to jobs with enough "variation" in their duties. *American Heritage*, *supra*, at 1080 (defining "range"). That view, though, might treat an applicant as "not disabled" if the applicant could engage in a variety of jobs—even if none of the jobs existed in large numbers in the economy. *Cf.* 20 C.F.R. pt. 404, sub. pt. P, app. 2, § 202.00(e). Regardless, we need not resolve this quandary here. Hamilton's challenge to the ALJ's decision in this case rests on her *legal* argument that the word "work" in § 202.00(c) means "occupation." She does not raise a *factual* (substantial-evidence) challenge to the ALJ's conclusion that a "significant range" of jobs existed across the food-checker and auction-clerk occupations. So we can save the meaning of this phrase for another day.

Hamilton's contrary arguments do not convince us otherwise. She primarily relies on two Ninth Circuit decisions that have interpreted the phrase "significant range of . . . work" in § 202.00(c). *See Maxwell*, 971 F.3d at 1131–32; *Lounsburry*, 468 F.3d at 1117. In *Lounsburry*, the Ninth Circuit decided that an applicant's ability to perform one other *occupation* did not suffice to show that the applicant could perform a "significant range of work." *See* 468 F.3d at 1117. The court interpreted the word "work" to mean "occupation" based on interpretive guidance (Social Security Ruling 83-10) issued by the Administration in 1983. *Id.* This guidance defined the phrase "Range of Work" in the Medical Vocational Guidelines to mean "*Occupations* existing at an exertional level" (such as the "light work" level relevant here), and it defined "Full Range of Work" to mean "All or substantially all *occupations* existing at an

exertional level." *Id.* (quoting S.S.R. 83-10, 1983 WL 31251, at *7 (S.S.A. Jan. 1, 1983)). Having defined the word "work" to mean "occupation," the court next turned to the phrase "significant range." *Id.* According to the court, nobody would describe someone who could perform one occupation as having the ability to perform a "significant range" of occupations. *Id.* And while the Administration argued that this phrase could be met if an applicant could perform one occupation that has a "significant number of jobs" in the national economy, the court reasoned that the regulation did not use that phrase. *Id.*

The Ninth Circuit doubled down on this approach in *Maxwell*. The applicant there had the ability to perform two occupations. *See Maxwell*, 971 F.3d at 1131–32. But the court held that this fact did not show that she could perform a "significant range of work." It reasoned that a "range" of "occupations" required at least two. *Id.* at 1131. And because § 202.00(c) used the phrase *significant* range, the section "must require more than two" occupations. *Id.* The court again rejected the Administration's argument that the ability to perform two occupations could suffice if the occupations included many jobs. *Id.* at 1131–32. Like *Lounsbury*, it noted that § 202.00(c) used the phrase "significant range of work," not "significant number of jobs."

We respectfully disagree with this approach. For starters, § 202.00(c) does not use the word "occupation." It uses the word "work." And the Ninth Circuit did not attempt to determine what this word meant by invoking the "traditional tools" of interpretation. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (citation omitted). Instead, the court reflexively deferred to the Social Security Ruling that read "work" as "occupation." *See Lounsbury*, 468 F.3d at 1117. That reasoning deviates from the Supreme Court's command that we attempt to determine what a regulation means on our own before adopting administrative guidance on the issue. *See Kisor*, 139 S. Ct. at 2414–18.

Next, the Ninth Circuit's approach also deviates from the Administration's current reading of the relevant regulations. Despite Hamilton's repeated reliance on Social Security Ruling 83-10, the Administration did not bother to cite that ruling's definition of "range of work" on appeal. To the contrary, its briefing affirmatively contradicted the ruling's definition. The Administration explained that § 202.00(c) "does not even contain the word 'occupation[.]'" Appellee's Br. 21.

Lastly, the Ninth Circuit suggested that "*Congress* might have drafted [§] 202.00(c) to require only a 'significant number of jobs'" but that "it chose not to do so." *Lounsbury*, 468 F.3d at 1117 (emphasis added). Yet the Administration—not Congress—drafted the Medical Vocational Guidelines. So the Ninth Circuit mistook an administrative agency for our legislative branch. Contrary to the Ninth Circuit's claim, moreover, Congress did bar a disability finding if an applicant could perform "*any*" type of "work" that existed "in *significant numbers*" in the country. 42 U.S.C. § 423(d)(2)(A) (emphasis added). Hamilton does not dispute that she could perform work as a food checker and auction clerk or that this work exists in significant numbers in the national economy. Our reading of § 202.00(c) thus best respects Congress's choices.

In sum, the ALJ did not err by ruling that Hamilton was not disabled under the regulations because she had skills that transferred to a significant range of work.

### III.

We can quickly dispose of Hamilton's two other arguments on procedural grounds. *First*, Hamilton argues that the Administration failed to adequately explain its view about the proper interpretation of § 202.00(c). This failure, she alleged, violated her Fifth Amendment right to due process and the Administrative Procedure Act (APA). But she did not raise her due-process or APA claims in the district court. She has thus forfeited the claims, and we decline to address them for the first time on appeal. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010).

*Second*, Hamilton contends that the ALJ erred on a different ground: by considering whether her transferrable skills gave her a "competitive edge" over younger individuals seeking employment. This argument rests on some regulatory history that begins with our decision in *Preslar v. Secretary of Health & Human Services*, 14 F.3d 1107 (6th Cir. 1994). Under an earlier version of 20 C.F.R. § 404.1563(d), the Administration treated applicants who were "close to retirement age" and who had a severe impairment as unable to adjust to light or sedentary work unless they had "highly marketable" skills. In *Preslar*, we interpreted "highly marketable skills" to require applicants to "enjoy[] a significant advantage or edge over others competing for employment." 14 F.3d at 1112. In "Acquiescence Ruling" or "AR" 95-1(6), the

Administration found *Preslar* contrary to the regulation and decided that it would apply only to applicants in the Sixth Circuit. *See* Acquiescence Ruling (AR) 95-1(6), 1995 WL 259486, at *3–4 (S.S.A. May 4, 1995). But the Commissioner rescinded that Acquiescence Ruling after amending the regulation to eliminate the "highly marketable skills" reference. *See* Rescission of Social Security Acquiescence Rulings 95-1(6), 99-2(8) and 99-3(5), 65 Fed. Reg. 18144, 18144–45 (Apr. 6, 2000).

Hamilton now argues that the ALJ wrongly relied on the outdated Acquiescence Ruling. At first, the ALJ asked the vocational expert whether Hamilton's cashiering skills were highly marketable and gave her a competitive edge over younger individuals. The ALJ later withdrew the question, though, when he realized that the question mattered only for the rescinded AR 95-1(6). Nevertheless, the ALJ's written opinion then extraneously noted that Hamilton's experience as a cashier gave her a "competitive edge" over younger workers.

Even if the ALJ erred with this reference, however, we find the error harmless. The ALJ independently concluded that Hamilton's skills transfer to a significant number of semi-skilled jobs. That conclusion meant that she did not qualify as disabled. So any separate consideration about whether those skills also gave her a competitive edge could not have affected the outcome. *See* 28 U.S.C. § 2111; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

For these reasons, we **AFFIRM** the district court's judgment.