NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0433n.06

No. 24-3201

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 29, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JUSTIN T. ROBBINS, | ) | |
|     Plaintiff-Appellant, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
|  | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
|     Defendant-Appellee. | ) | OPINION |
|  | ) | |

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Justin Robbins applied for supplemental security income from the Social Security Administration on the ground that his autism prohibited him from working. An administrative law judge denied relief to Robbins, and the district court upheld the denial. Because substantial evidence supported the administrative law judge's decision, we affirm.

I

Robbins was born in 2000 and lives with his mother in northeast Ohio. He has suffered from autism since childhood. Doctors diagnosed him with this condition after his elementary-school teachers expressed concern with some of his behaviors—such as his robotic and repetitive speech and struggles to accept changes to his routine. But this medical condition did not stop Robbins from doing "decently well" in school. Admin. R. ("A.R.") 35. Testing showed that he had a high IQ. And he graduated from high school without the need for special education.

Robbins was 20 years old at the time of his administrative hearing. He had adjusted to adulthood in some respects. He was in his third year of community college seeking a music degree. He had his driver's license and was "pretty good" at getting to classes. A.R. 46, 435. He worked "decently well" with classmates. A.R. 37. And apart from school, Robbins did not receive counseling or medication for any problems with his mood, anxiety, or concentration. He also had a good relationship with his young nieces and nephews and sometimes watched them for his sister.

Yet Robbins struggled in other ways. He had never held a job. Even as an adult, he relied on his mother for his daily living. He did not handle his own finances. Further, unless his mother reminded him, he often overlooked his personal hygiene (for example, by failing to shower or shave). Robbins could microwave frozen foods, but mostly relied on his mother to cook for him. His mother also needed to give him "step-by-step" instructions on basic chores and to repeatedly remind him to do the chores. A.R. 50. And she asked him about his homework every day.

In January 2020, Robbins sought supplemental security income from the Social Security Administration. Agency officials first rejected Robbins's claim. He thus requested a hearing before an administrative law judge.

The administrative law judge found that Robbins did not qualify as "disabled" under the Social Security Act and so denied him benefits. To reach this result, the judge followed a five-step approach for determining disability. *See* 20 C.F.R. § 416.920(a)(4); *Hamilton v. Comm'r of Soc. Sec.*, 98 F.4th 800, 804 (6th Cir. 2024) (per curiam). At the first two steps, the judge recognized that Robbins had not worked and that his autism was a "severe" impairment. A.R. 16. At step three, the judge held that Robbins did not qualify for an automatic disability finding because his autism did not meet the criteria for such a finding in agency regulations. A.R. 17–19. At step four, the judge determined Robbins's "residual functional capacity." A.R. 19–22. The

judge decided that Robbins could perform "simple (routine) tasks" in a low-stress environment and could "respond appropriately to supervision, coworkers, and usual work situations[.]" A.R. 19. At step five, the judge relied on a vocational expert to conclude that Robbins could perform "work that exists in significant numbers in the national economy." A.R. 22–23. This expert opined that someone with Robbins's capacity could hold various jobs, including "Order Picker," "Hand Packager," and "Collator Operator." A.R. 55. The Appeals Council denied review, so the judge's denial of benefits became the final agency decision. *See* 20 C.F.R. § 416.1481.

Robbins sued in federal court over this denial of benefits. *See* 42 U.S.C. § 405(g). A magistrate judge recommended that the district court reject Robbins's arguments and uphold the administrative law judge's decision. *See Robbins v. Comm'r of Soc. Sec.*, 2023 WL 8769603, at *8–15 (N.D. Ohio Oct. 20, 2023). The district court agreed. *See Robbins v. Comm'r of Soc. Sec.*, 2024 WL 78276, at *1–2 (N.D. Ohio Jan. 8, 2024). Robbins appealed. We review the district court's decision de novo. *See Hamilton*, 98 F.4th at 803.

II

The Social Security Act provides benefits to applicants who suffer from a "disability." 42 U.S.C. § 423(a)(1)(E). The Act defines "disability" to mean the "inability to engage in any substantial gainful activity" because of a physical or mental impairment that will likely last for at least 12 months. *Id.* § 423(d)(1)(A). To determine whether an impairment meets this definition, the Social Security Administration has adopted a "sequential evaluation process[.]" 20 C.F.R. § 416.920(a)(4). This process considers five issues. First, applicants can qualify as disabled only if they are not engaged in "substantial gainful activity[.]" *Id.* § 416.920(a)(4)(i). Second, they can qualify as disabled only if they have "severe" and lasting impairments. *Id.* § 416.920(a)(4)(ii). If applicants pass these first two steps, the process turns to the third issue: Do their impairments

"meet[] or equal[] one of [the Administration's] listings in" its regulations? *Id.* § 416.920(a)(4)(iii). If so, they automatically qualify as disabled. *Id.* If not, the process turns to issue four: Can applicants perform their "past relevant work" given their "residual functional capacity"? *Id.* §§ 416.920(a)(4)(iv), 416.945(a)(1). If they still can perform their past work, they are not disabled. *Id.* § 416.920(a)(4)(iv). If they cannot, the process ends with issue five: Can they switch "to other work"? *Id.* § 416.920(a)(4)(v). If not, they are disabled. *Id.*

Robbins raises a narrow dispute under this five-step process. He challenges only the administrative law judge's discussion of steps three and four. And he does not claim that the judge legally erred at these steps—a claim that we would review de novo. *See Hamilton*, 98 F.4th at 803. Rather, he says that the judge lacked enough evidence to support his factual findings.

So Robbins's arguments trigger a deferential standard of review. We must treat the administrative law judge's factual "findings" as "conclusive" if they are "supported by substantial evidence[.]" 42 U.S.C. § 405(g). A finding of fact survives this substantial-evidence test as long as a "reasonable mind" could conclude that the evidence adequately supports the finding. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted); *see Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (per curiam). Under this forgiving standard, a court frequently must uphold an administrative law judge's finding even if the court believes the evidence would better support the contrary view. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). In other words, administrative law judges often have "a zone of choice" to decide between the parties' competing factual narratives "without interference by the courts" for either alternative. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (citation omitted). Robbins's claims at steps three and four cannot overcome this deferential test.

4

1. *Step Three*. Applicants can prove their disability at the third step by establishing that they "have an impairment(s) that meets or equals one of [the Administration's] listings in appendix 1 to subpart P of part 404 of this chapter[.]" 20 C.F.R. § 416.920(a)(4)(iii). These so-called "listings" identify many impairments of the "major body systems" that are "severe enough" to bar work. *Id.* § 416.925(a). That is, an applicant with an impairment that falls within a listing qualifies as disabled based on that impairment alone without further inquiry into how the impairment affects the applicant's ability to work. *See Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)). To qualify for this regulatory shortcut, though, applicants must prove that they "meet *all* of the specified medical criteria" in a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

This case involves the listing for "[a]utism spectrum disorder": Listing 12.10. *See* 20 C.F.R. pt. 404, sub. pt. P, app. 1, § 12.10. Applicants must satisfy both of this listing's two paragraphs: Paragraphs A and B. *See id.* § 12.00(A)(2). Paragraph A lists the "medical criteria" for autism. *Id.* § 12.00(A)(2)(a). It requires applicants to show both "[q]ualitative deficits in verbal communication, nonverbal communication, and social interaction" and "[s]ignificantly restricted, repetitive patterns of behavior, interests, or activities." *Id.* § 12.10(A)(1)–(2).

Paragraph B next lists four "functional criteria" used "in a work setting": (1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* § 12.00(A)(2)(b). To decide how an applicant's impairment affects each of these four factors, the Administration uses a "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). The autism listing (Listing 12.10) requires applicants to show an "[e]xtreme limitation of one" of these four factors or a "marked limitation of two" of them. *Id.* pt. 404, sub. pt. P, app. 1, § 12.10(B). An applicant has

an extreme limitation if the applicant cannot "function" in the area "independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(F)(2)(e). An applicant has a marked limitation if such "functioning" "is seriously limited." *Id.* § 12.00(F)(2)(d). And the applicant has only a moderate limitation if such "functioning" is "fair." *Id.* § 12.00(F)(2)(c).

Applying this framework to Robbins, the administrative law judge jumped immediately to the "criteria" in Paragraph B. A.R. 17. He found that Robbins had only a moderate limitation in three factors and a mild one in the fourth. A.R. 17–19. Robbins now criticizes the judge for not considering Paragraph A. But Robbins must "satisfy the requirements of *both* paragraphs A and B." 20 C.F.R. pt. 404, sub. pt. P, app. 1, § 12.00(A)(2) (emphasis added); *see Sullivan*, 493 U.S. at 530–31. We thus may uphold the judge's decision if substantial evidence supported his Paragraph B analysis without considering Robbins's Paragraph A arguments. Turning to Paragraph B, Robbins criticizes the judge's finding that he had only moderate limitations (as compared to marked ones) for two of the four factors: "concentrate, persist, or maintain pace" and "adapt or manage oneself." We will take those two factors in turn.

*Concentrate, Persist, or Maintain Pace*. The Administration considers how well applicants can "[c]oncentrate, persist, or maintain pace" to measure their ability to "focus attention on work activities" for a sustained period. 20 C.F.R. pt. 404, sub. pt. P, app. 1, § 12.00(E)(3). The agency lists several examples of what this factor analyzes: Can applicants work at a "consistent pace"? *Id.* Can they timely complete tasks? *Id.* Can they change tasks without disrupting others? *Id.* Can they work with others "without interrupting or distracting them"? *Id.* Can they follow a routine? *Id.* And can they work a full day without the need for special breaks? *Id.*

The evidence would allow a "reasonable mind" to adopt the administrative law judge's conclusion that Robbins had only a "moderate limitation" for this factor. *Biestek*, 587 U.S. at 103

(citation omitted); A.R. 18. To begin with, Robbins graduated from high school and completed three years of college. These achievements suggest that he can focus on work-like matters for a sustained period. A.R. 18. Next, the Administration asked Robbins to have a mental-status assessment with Dr. Christopher Ward. A.R. 18, 435–40. Dr. Ward conducted this interview remotely because of COVID-19. A.R. 435. Robbins performed reasonably well. Among other tasks, "he completed ten iterations" of counting "backward from 100 by 7" in thirty seconds. A.R. 438. Robbins also showed a "level of energy, persistence and pace" that was "adequate" for all the tasks that Dr. Ward assigned to him. A.R. 439. One could reasonably rely on this evidence to conclude that Robbins had a "fair" ability to concentrate, persist, and maintain pace. 20 C.F.R. pt. 404, sub. pt. P, app. 1, 12.00(F)(2)(c).

Robbins counters that the administrative law judge placed too much "weight on the wrong evidence[.]" Appellant's Br. 31. He points to a medical report from Dr. Kendall Brown, another psychologist. A.R. 501–08. Dr. Brown opined that Robbins found "consistent concentration" difficult, especially when he had "to persist with tasks through increasing difficulty." A.R. 501. Brown added that these "difficulties" would limit Robbins's "ongoing employability." *Id.* Robbins asks us to credit Brown's opinion over Ward's because Brown met with Robbins "eight times" in person, but Ward saw him only once using a "telehealth platform." A.R. 435, 501. Yet these differences in the number and method of visits represent just two datapoints that go to the weight of these dueling opinions. And the administrative law judge—not this court—bore the burden to consider the competing credibility of the two doctors. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). In that respect, the judge gave other reasons why he did not find Brown's opinion persuasive. Brown's findings, for example, conflicted with objective evidence, including Robbins's completion of college coursework and his scores on intelligence tests. A.R. 18–19, 21.

Brown's opinion also rested heavily on Robbins's subjective "self-reporting" of his abilities. A.R. 21. The judge thus reasonably weighed this competing evidence. *See Biestek*, 587 U.S. at 103.

*Adapt or Manage Oneself.* The Administration considers how well applicants can "[a]dapt or manage" themselves to measure their "abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. pt. 404, sub. pt. P, app. 1, § 12.00(E)(4). The agency again offers examples of what this factor evaluates: Can applicants respond "to [the] demands" of the job? *Id.* Can they distinguish between "acceptable and unacceptable work performance"? Can they set "realistic goals" and make "plans" for themselves "independently of others"? Can they keep "their personal hygiene and attire appropriate to a work setting"? And can they see "normal hazards" and take precautions to avoid them? *Id.*

Here too, the evidence would allow a "reasonable mind" to adopt the administrative law judge's conclusion that Robbins had only a "moderate limitation" for this factor. *Biestek*, 587 U.S. at 103 (citation omitted); A.R. 18. As an initial matter, Robbins could get to classes "independently" because he had a driver's license. A.R. 18. Next, Robbins had the intelligence to care for his personal hygiene, and he dressed properly when he had the "motivation" to do so. *Id.* He also "did not describe difficulty attending to grooming and hygiene" in his interview with Dr. Ward. A.R. 437. And even when he confronted new "environments" (such as the interview with Ward), he did not encounter "acute distress[.]" A.R. 18. The administrative law judge also limited Robbins's residual functional capacity to "low stress" jobs. A.R. 19.

Robbins responds that the administrative law judge overlooked his mother's testimony. She explained that she must repeatedly remind Robbins to take care of his hygiene. Yet the judge discussed this testimony. Ultimately, however, he found that Robbins's intelligence and his ability to attend to his hygiene for various functions (including his classes and medical appointments)

suggested that he could do so for a job. At day's end, his mother's testimony may well have allowed the judge to find that he had a marked (not just a moderate) limitation. But her testimony merely created a "zone of choice" between these two potential findings. *Mullen*, 800 F.2d at 545 (citation omitted). That choice belonged to the administrative law judge—not this court. *See id.*

2. *Step Four*. At step four, the administrative law judge must identify the "residual functional capacity" of applicants and consider how this capacity affects their ability to work at prior employment. 20 C.F.R. § 416.920(a)(4)(iv). This "capacity is the most [that applicants] can still do despite [their] limitations." *Id.* § 416.945(a)(1). The Administration recognizes that an applicant's mental limitations in "remembering" or "carrying out instructions" or in "responding appropriately to supervision, coworkers, and work pressures . . . may reduce" the applicant's ability to work. *Id.* § 416.945(c). And it has told administrative law judges to identify an applicant's residual functional capacity based on "all of the relevant medical and other evidence" in the case. *Id.* § 416.945(a)(3). Here, the judge identified Robbins's residual functional capacity by listing his abilities and limitations. A.R. 19. The judge found that Robbins could not do "complex tasks" but that he could perform "simple (routine) tasks" "for at least two hours at a time" and "carry out" and "remember simple instructions." *Id.* The judge added that Robbins could handle limited interactions with supervisors and coworkers and "deal with changes in routine work settings." *Id.* But Robbins could perform only "low stress" jobs. *Id.*

Robbins nitpicks this residual functional capacity in various ways. In response, the Social Security Commissioner suggests that Robbins forfeited any challenge to the judge's description of his capacity by raising only conclusory claims in the district court. Yet we need not resolve this forfeiture issue because substantial evidence supported the judge's conclusion. For example, Robbins's ability to complete three years of college suggests that he can understand instructions

9

and perform simple tasks.  A.R. 20.  And his ability to follow Dr. Ward's instructions during the interview also suggests that he could respond appropriately to supervisors.  *Id.*

In response, Robbins does not attempt to overcome the demanding substantial-evidence test.  Instead, he merely cites competing evidence.  For example, he again relies on Dr. Brown's report to suggest that he cannot carry out simple instructions.  Yet Dr. Ward explained that Robbins's ability to complete various tasks showed that he had no difficulties in understanding, remembering, and carrying out instructions.  A.R. 439.  As another example, Robbins challenges the administrative law judge's finding that he can properly interact with supervisors and coworkers.  Yet he ignores that he himself testified that he worked "decently well" with his classmates on projects. A.R. 37.  All told, Robbins's counsel has litigated this appeal as if we were the factfinder.  But that is not our role.  *See Crum*, 921 F.2d at 644.  Because substantial evidence supported the administrative law judge's findings, we must uphold them.  *See id.*

We affirm.