NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0200n.06

No. 24-3898

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| MELISHA A. SALISBURY, | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE |
| | ) SOUTHERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) OHIO |
| Defendant-Appellee. | ) |
| | ) OPINION |
| | ) |

Before: SUHRHEINRICH, MOORE, and NALBANDIAN, Circuit Judges.

SUHRHEINRICH, Circuit Judge: Plaintiff Melisha Salisbury appeals the district court's judgment denying her request for disability insurance benefits (DIB) on the basis that her condition did not medically equal[1] the Listing 11.09(A) for multiple sclerosis.[2] She claims that the administrative law judge ignored the opinion of the medical expert hired by Social Security to review the record, who concluded that her condition did equal the listing.[3] We affirm.

**I.**

To establish that she medically equals Listing 11.09(A) at step three of the sequential evaluation process, *see* 20 C.F.R. § 404.1520(a)(4), Salisbury was required to show findings medically equivalent to "[d]isorganization of motor function in two extremities, resulting in an

---

[1] Salisbury does not argue that she meets (as opposed to equals) the listing.

[2] Multiple sclerosis (MS) is a "common demyelinating disorder of the central nervous system, causing patches of sclerosis (plaques) in the brain and spinal cord. . . . [T]ypical symptoms include visual loss, diplopia, nystagmus, dysarthria, weakness, paresthesias, bladder abnormalities, and mood alterations." Stedman's Medical Dictionary 802480.

[3] As the parties are aware, this case has a somewhat-protracted procedural history. Much of it is not directly relevant to the issue before us on appeal, so we opt not to discuss it.

extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use of upper extremities." *See* 20 C.F.R. Pt. 404, Subpt. P, App 1, § 11.09 (internal cross references omitted). "Disorganization of motor function" is defined as "interference, due to your neurological disorder, with movement in two extremities; i.e., the lower extremities, or upper extremities (including fingers, wrists, hands, arms, and shoulders)." *Id.* at § 11.00(D)(1). "Extreme limitation" is defined as "the inability to stand up from a seated position, maintain balance in a standing position and while walking, or use your upper extremities to independently initiate, sustain, and complete work-related activities." *Id.* at § 11.00(D)(2). This means standing up or staying upright without the assistance of another person or the use of an assistive device "such as a walker, two crutches, or two canes." *Id.* at § 11.00D(2)(a), (b).

The claimant bears the burden at this step of proving that she meets or equals the listing. *See* 20 C.F.R. § 404.1512(a), *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

## II.

As noted, the administrative law judge hired a medical expert, Dr. Nikerson Geneve, D.O., to review Salisbury's claim. Dr. Geneve identified Salisbury's impairments as multiple sclerosis, atrial fibrillation, chronic migraines, radiculopathy of the lumbar region, optic neuritis, history of asthma, plantar fasciitis, Achilles tendinitis, and high-grade partial tear of the lateral cord of the plantar fascia. Dr. Geneve concluded that with these impairments Salisbury equaled Listing 11.09 as of May 2018. Dr. Geneve cited and summarized the following medical records in support but did not provide any further explanation:

> [3F Pg.4] On 10/07/2015 claimant evaluated with MRI of brain for history of optic neuritis. Per documented impression, there is **several abnormal foci of white matter signal hyperintensity with 8-9 mm plaque** like size and appearance in the bilateral pericallosal and corona radiata as well as left subcortical white matter

interfaces with appearance **suspect for demyelinating process such as multiple sclerosis.**

[llf Pg.2] On 5/2/2016 claimant evaluated in office of Dr. Amjad Rass ad (sic) Linda Swallie. [Pg.2] Per documentation, clamant (sic) with **normal motor function and symmetric, sensation intact and normal gait and station.**

[15F Pg.3] On 7/30/2016 claimant evaluated in office of Dr. Amjad Rass ad (sic) Linda Swallie. [Pg.3] Per documentation, clamant (sic) with **normal motor function and symmetric, sensation intact and normal gait and station.**

[16F Pgs. 1-9] On 9/12/2016 claimant evaluated with consultative evaluation as follows: [Pg.1] Per exam, claimant reports **extreme fatigue and can walk about 50 yards and then her legs get crampy.**

[18F Pg.2] On 10/15/2016 claimant evaluated in office of Dr. Amjad Rass ad (sic) Linda Swallie. [Pg.2] Per documented exam, claimant with **normal motor function and symmetric and normal gait and station.**

[47F Pg.5] On 5/1/2018 claimant evaluated by physical therapy. Per documentation, claimant with recent deconditioning x 2 months. Claimant with documentation of **global weakness, decreased functional endurance, impaired posture.**

[49F Pg.52] On 9/27/2018 claimant evaluated by neurology. Per exam, claimant using a **cane.**

[39F Pg.6] On 3/07/2019 claimant evaluated by neurology. Per documentation, claimant **using cane- single prong.** Visual acuity 20/20 OD and 20/20 OS. [Pg.6] Proprioception and vibration normal both legs.

[40F Pg.17] On 4/12/2019 Per documented impression of MRI of the brain, f**indings consistent with increase in number and size of the numerous scattered area of periventricular white matter changes consistent with claimant's history of multiple sclerosis.**

[42F Pg.4] On 5/21/2019 claimant evaluated. Per HPI, claimant has been stable but notes **that she has f**allen several times due to her leg just giving way suddenly**.** [43 Pg.1] On 6/24/2019 claimant given prescription for **wheeled walker with seat with diagnosis of MS and Fatigue.**

[49F Pg.24] On 11/14/2019 claimant evaluated by neurology. Per documentation, claimant **using a rolator.**

[48F Pg.9] On 8/14/2020 claimant had MRI of the left ankle without contrast as follows with the impression of: Acute plantar fasciitis with **high grade partial tear of the lateral cord of the plantar fascia at its origin.**

[53F Pg.11] On 9/10/2020 claimant evaluated with MRI Of the thoracic spine as follows with the impression of: Normal MRI of the thoracic spine pre and post contrast media.

[49F Pg.8,9] On 9/23/2020 claimant no longer using a walker. Claimant walks without assist. Per exam, **gait is normal.**

[56F Pg.5] On 11/04/2021 claimant evaluated by physical therapy with diagnosis of **radiculopathy, lumbar region and low back pain.** [Pg.5] Per documentation, limited L/S ROM, decreased B LE strength/flexibility, **poor postural awareness, limited activity tolerance, and impaired overall** **functional mobility.**

The administrative law judge decided that the "various physical examinations throughout the record, including the consultative examination, neurology records, and even primary care records" established that Salisbury "neither meets nor equals the listing." The administrative law judge went on to find that Salisbury had the residual functional capacity (RFC) to perform a limited range of sedentary work with several additional restrictions, including the use of a cane. She could not perform any past relevant work but was able to perform other work existing in significant numbers in the national economy.

The magistrate judge reviewed all the medical records Dr. Geneve relied on and concluded that the administrative law judge reasonably determined that Salisbury did not medically equal Listing 11.09(A) because the medical examinations showed mostly normal results. The magistrate judge rejected Salisbury's argument that the administrative law judge failed to properly consider Dr. Geneve's opinion.

The district court overruled Salisbury's objection to the report and recommendation, adopted the report, and affirmed the Commissioner's decision.

**III.**

"We review the district court's decision de novo." *Hamilton v. Comm'r of Soc. Sec.*, 98 F.4th 800, 803 (6th Cir. 2024) (per curiam). "Our review of the [administrative law judge's] decision is limited to whether the [administrative law judge] applied the correct legal standards and whether the findings of the [administrative law judge] are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "The substantial-evidence standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a

conclusion.'" *Id.* at 406 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

**IV.**

Salisbury maintains on appeal to this court that the administrative law judge committed reversible error at step three of the sequential evaluation process by concluding that Salisbury's impairments did not equal Listing 11.09. The Commissioner maintains that the administrative law judge (1) provided an adequate explanation "throughout his decision"; (2) "identified substantial evidence throughout his decision"; and (3) "properly considered Dr. Geneve's opinion."

**A.**

We agree with the Commissioner on all fronts. First, contrary to Salisbury's argument, the administrative law judge adequately explained why Salisbury did not equal Listing 11.09. The administrative law judge found that the "physical examinations d[id] not establish an extreme limitation in standing, balancing, walking, or using the upper extremities." The judge noted that the prescription for a cane as "medically necessary," was "based primarily on the claimant's subjective reports of falls, rare findings of muscle weakness, and the claimant's use of a cane intermittently." Furthermore, "her performance during physical examinations and physical therapy" established that Salisbury "d[id] not have a marked limitation in physical functioning."

This explanation surpasses the rudimentary requirements of Social Security Ruling (SSR) 17-2p, which explains how an administrative law judge should treat written interrogatories from a medical expert who concludes that an individual equals a regulation. "[T]he adjudicator must ask the [medical expert] to identify medical evidence in the record that supports the [expert's] statements. Adjudicators will consider [medical expert] testimony and interrogatories using our rules for considering evidence." SSR 17-2p, 2017 WL 3928306, at *4 (March 27, 2017). After

considering the medical expert's opinion, the "adjudicator will then consider whether an individual's impairment(s) medically equals a listing." *Id.* If the adjudicator does not agree with the medical expert's opinion, SSR 17-2p says that "the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment"; "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding," *id.*, because "[a]n adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Id.*

Furthermore, as the Commissioner points out, we have never interpreted the regulations to require a lengthy explanation from the administrative law judge. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir 2006) ("there is no heightened articulation standard where the ALJ's findings are supported by substantial evidence"). What matters is that the administrative law judge "review[s] all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment.'" *Id.* As explained in the next section, the administrative law judge followed that course here.

**B.**

Second, we likewise agree that the administrative law judge sufficiently identified the evidence supporting his finding. In fact, the administrative law judge's findings are exhaustive. The administrative law judge carefully walked through Salisbury's examination records, including every record on which Dr. Geneve relied, beginning with Salisbury's October 2015 MRIs of the

brain and thoracic spine through records from 2021.[4]   Again, the magistrate judge accurately

summarized the administrative law judge's work product:

> For example, plaintiff's September 27, 2018 neurological examination on which the ALJ relied (Tr. 986) revealed normal vibration and proprioception in both legs, and she completed timed walking trials using only a single-prong cane. (Tr. 1440-41). Plaintiff's physical examinations at least through 2019 revealed normal and symmetric motor function with normal gait and station. (Tr. 990, citing Tr. 681, 687, 689, 697, 718, 721, 748, 767, 771, 874, 881, 883, 889, 896, 900, 1498, and 1561). On March 7, 2019, plaintiff used a single-prong cane during her neurological examination, which revealed 5 of 5 strength in 23 of 24 muscle groups and 4+ strength in the remaining group. (Tr. 986, citing Tr. 1512). The March 7, 2019 examination notes on which the ALJ relied also reflect "[n]ormal stride length, arm swing, and base width" and "[a]ble to walk on toes, heels, and tandem walk." (Tr. 1513). As the ALJ noted, plaintiff's May 21, 2019 neurological examination revealed similar findings, even though she reported experiencing falls. (Tr. 986, citing Tr. 1539-44). During her November 14, 2019 examination, plaintiff used a rollator, but her physical examination again reflected 5 of 5 strength in 23 of 24 muscle groups with intact sensation, and normal vibration and proprioception in both legs. (Tr. 986, citing Tr. 1728).

> The ALJ also correctly noted that by September 23, 2020, plaintiff walked without assistance. (Tr. 986, citing Tr. 1712). Her neurological examination revealed a normal gait with 5 of 5 strength in all 24 muscle groups, normal vibration and proprioception in both legs, and intact sensation in both upper and lower extremities. (*Id.*, citing Tr. 1717). In January and September, 2021, plaintiff again required no assistive device and exhibited "stable gait" and "normal tandem walking." (Tr. 986 and 987, citing Tr. 1838 and 1919).

As the administrative law judge, magistrate judge, and district court concluded, these

objective findings constitute substantial evidence supporting the ALJ's finding that Salisbury's

condition does not equal a listing-level impairment.  As the administrative law judge noted (and

included in an RFC limitation) Salisbury's intermittent use of a cane "is not equiv[alent] to an

extreme limitation."   In fact, the medical records earmarked by Dr. Geneve support the

administrative law judge's conclusion.  Other than the cane and walker prescriptions, the records

quoted above showed mostly normal findings.  Dr. Geneve himself relied on a record dated

---

[4] We incorporate by reference the administrative law judge's description of Salisbury's examination records. Salisbury does not claim that the administrative law judge mischaracterized the evidence.

September 23, 2020 reporting that Salisbury was walking unassisted. Dr. Geneve's reliance on Salisbury's subjective reports, untethered to objective medical findings, cannot carry the day. *See* 20 C.F.R. § 404.1529(d)(3) (stating that the Commission "will not substitute [the claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [the claimant's] impairment(s) to that of a listed impairment").

The administrative law judge didn't stop there. He also considered the conclusions of two state agency medical consultants, Dr. Jasti and Dr. Mikalov, who assessed Salisbury's RFC and opined that Salisbury could perform certain light exertional activity. Notably, the judge gave their opinions no weight because "they failed to adequately consider the impact of [Salisbury's] multiple sclerosis" coupled with other impairments. The judge considered the opinion of Dr. Hamm, who opined that "the claimant's overall functional mobility was impaired and her deficits limit her ability to tolerate prolonged positions, ambulate, perform functional transfers, and perform heavy chores around her home," finding that although that "opinion [wa]s somewhat vague, the claimant's physical examinations detailing intermittent diminished strength and gait abnormalities do support no prolonged ambulation or heavy activities." *(Id.)* The administrative law judge factored in the November 2018 functional capacity evaluation of Dominic Crock, who "found no limitations to standing and only slight limitations to walking"; the opinions of treating source, Dr. Rass, who reported intact sensation, normal gait and station and normal motor function; and neurologist Dr. Racke; as well the consultive examination of Dr. Offutt.

Finally, the administrative law judge reviewed Salisbury's account of her activities. As the judge noted, Salisbury testified that she cooked for her children, shopped in stores, managed her finances, drove a car, chased her dog, and performed limited home remodeling. These

activities do not reflect extreme limitation caused by the disorganization of motor function in two extremities.

In short, it's hard to see what in the record the administrative law judge failed to consider. And as the magistrate judge and district court concluded, his finding that the record did not show an impairment medically equal to Listing 11.09 is overwhelmingly established by the evidence.

**C.**

Yet Salisbury persists in the assertion that the administrative law judge ignored Dr. Geneve's conclusion. We disagree. The administrative law judge explicitly stated that he was assigning that opinion "no weight" as "inadequately supported" because it "fail[ed] to cite to objective physical examination findings supporting use of a two-handed assistive device." Rather, the evidence "overwhelmingly documented" that Salisbury can "ambulate entirely unassisted or with only a single cane." The administrative law judge noted that Salisbury confirmed the accuracy of the statement in the September 23, 2020 medical-record note reporting that she was not using an assistive device. As noted above, Dr. Geneve relied on the same examination record.

In any event, the administrative law judge was not required to "give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3); SSR 17-2p, 2017 WL 3928306, at *4. And Salisbury points to no authority mandating that the administrative law judge specifically mention Dr. Geneve's opinion at step three. *See generally Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (an agency need not "follow a particular formula or incant 'magic words'" in order for its decision to be upheld by a reviewing court). Most important, as the magistrate judge and district court also realized, substantial evidence supported the administrative law judge's conclusion that Dr. Geneve's opinion was unexplained and largely unsubstantiated by the objective medical evidence, even that which Dr.

Geneve cited; indeed, the evidence cited also supported the administrative law judge's determination.

The district court said it best: (1) Salisbury "notably d[id] not attempt to explain how the medical records cited by Dr. Geneve demonstrate that [Salisbury's] impairment is medically equal" to Listing 11.09; (2) "the interrogatories state Dr. Geneve's blanket opinion that [Salisbury's] impairment equals [L]isting 11.09 but" fail to explain "how those records equate to" the listing; and (3) "no such explanation is apparent from the face of the interrogatories or the medical records cited therein." To the contrary, "the cited records show that [Salisbury] had 'normal gait and station' on multiple occasions." Though Salisbury sometimes used a single-prong cane, as the administrative law judge concluded, Salisbury "'was overwhelmingly ambulatory with a cane or without any assistance at all'—a far cry from the equivalent to an 'extreme limitation.'" In other words, Salisbury's intermittent need for a cane was not equivalent to an extreme limitation.

**V.**

As the Commissioner noted, "there is no question that Salisbury's multiple sclerosis significantly affects her functionality." But, as thoroughly explained by the administrative law judge, magistrate judge, and district court, the evidence does not support a finding of disability under Listing 11.09(A). **AFFIRMED.**